Good morning, judges. May you please record the manual appearing for Mr. Charles Githere. First of all, Your Honor, I did file... Please speak a little louder. The acoustics are not great in this courtroom, and just speak louder. Thank you. First, Your Honor, I did file a 28-J letter. I don't know if the court had a chance to review the letter. Okay. Thank you. Your Honor, in the letter I did point out that there's been quite a bit of change in the country conditions. And under U.S. v. Thomas, which cited U.S. v. Ventura... I'm not sure I did see the 28-J letter. I was thinking of another case. I thought in this case the former chairman of Githere's own political party is now the president of the country. And they had free and open elections, and basically things have shaped up. That was in 2002, Your Honor. This is why I filed the letter. I have a copy here. I was told to bring copies for the court. The government has a copy that I filed in court last week. Oh, it'll be in our files. We'll thank you, Your Honor. There was quite a bit of election violence this past year in 2007, December, that announced the results. And according to the United Nations, there were more than 600,000 displaced people of respondents' ethnic group in the Red Valley. And so the U.S. State Department itself warns Americans against traveling to Kenya for these reasons. And the political violence has led to quite a bit of a change in the ethnic makeup of the country, particularly members of respondents' party, petitioners' party, I'm sorry. So I do think under these conditions, I did request a remand under INS v. Ventura. Wouldn't you have to do that in front of the BIA, ask them to reconsider because of changed country conditions? Your Honor, I did cite the INS v. Ventura. This is what the Supreme Court said. And it says, Second remand could lead to the presentation of further evidence of current circumstances in Guatemala, evidence that may well prove enlightening given the five years that have elapsed since the report was written. And so C, Section 3.1.3.2 H.N. 7, permitting the BIA to remand the record to the immigration judge appropriate. So that does anticipate the court remanding based on new conditions. Help me with something else. Your Honor, I was kind of surprised. I saw that he testified that he had scars on the bottoms of his feet from the beatings. Yes, Your Honor. And I was kind of surprised I didn't notice a photograph of them in the record. Is there a photograph of the scars in the record? There is not, Your Honor. And I did point out that this is not a real ID case in the sense that under the Ninth Circuit case law, if respondents are credible, then he does not need corroborating documentation. And, in fact, there were extensive corroboration documents in this case, particularly several newspaper articles and several. . . Well, the IJ had a lot of problems with his credibility. And I realize in a foreign country, with a foreign country, it can be hard to come up with some kinds of proof. But, gee, in the most routine personal injury case, if the person has visible injuries or visible scars, you'd expect to see a photo. And I was wondering why I didn't. . . there isn't any, right? He did not have a photo. However, there is a doctor's letter. In the fact that, well, I don't need to. Yeah, and somebody who was hurt in a car accident doesn't need to produce any medical records. But there's going to be a lot of skepticism if they don't. It would help, Your Honor. However, the doctor's letter does point out that he has scars on his feet. And that is what we have. It's been more than 10 years since the injuries happened. I don't know whether or not a picture would have been a good representation of what his feet look like more than 10 years later. This happened in 1993. I'm talking about before the IJ. Yes, Your Honor. Even at that point, Your Honor, he had been in the U.S. for a few years. So there had been quite a bit of passage of time. And the problem with presenting a photograph as it currently exists is that it might create an impression. The injuries may not be. . . He said then in his testimony that his feet still had the scars from the beating. He did have scars from his feet, yes, Your Honor. But there were no letters presented. And then, Your Honor, you did point out the adverse credibility finding. Under the Ninth Street case law, Your Honor, the basis of IJ's finding of adverse credibility was not supported by the evidence. I point out because INS cited St. Kerr v. INS. Even though the translation makes it seem clear, it's actually St. Kerr, S-I-N-G-H dash K-A-U-R. And the citation is correct by the court, but the name of the case is not correct. That case is very easily distinguished from this case because in St. Kerr, the central issue was identity of the respondent in that case. There was an issue that he changed his name during the proceedings. And so because he changed his name, the court had questions about whether or not he was who he said he was. In fact, there was a dissent from St. Kerr. That dissent said that they should have given him an opportunity to explain why he changed his name through the proceedings. But that case was very distinguished from this case because several factors, the court pointed out, in St. Kerr were not present in this case. The first one was demeanor. The court pointed out that the respondent's demeanor in this case was actually appropriate. There was no inconsistency. The IJ was disturbed because he says he was arrested with Kanuthia, and Kanuthia's was arrested for violating the law. But then in another place he says he was. And there was a rest record. The rest record also said that he wasn't arrested. You've got to get it. Yes, Your Honor. Again, Kanuthia did point out that he was arrested. There were two arrests. Kanuthia mentioned the second one. However, the court erroneously stated he did not mention the first one. He said they had been arrested at several points. He did not particularly refer to the 1993 arrest. When he was asked about it, the respondent stated that the reason why is because he did not know him well. So it's possible that Kanuthia did not remember the first arrest, but he does remember the second one since they became acquainted while they were both in university. So I do think there is enough evidence in the record to support the fact that he was arrested twice. As counsel, I have a question. He said that he was not arrested for violation of the law. Now, was he contending he was arrested, but that what he did did not violate the law? Is that the interpretation we should give to that? Well, Your Honor, it's a little bit more complicated than that. I point out that on page 157 of the record, he was asked if he had been arrested and convicted of any crimes in the United States. He said he had never been arrested, but he was convicted. And the court was surprised and asked why he would be convicted without being arrested. And he stated that his understanding of arrest is to be taken by police and fingerprinting and the whole panoply of rights that we have in this country. And the court, this court in particular, has mentioned several times to respondents who have trouble understanding the concept of arrest the way we see it in this court. And I cite the court to Tekle V. Mukasey. This is from 2008, before this very court. And in that case, the court states that it goes into a very detailed analysis of what exactly being arrested means and the fact that somebody from a foreign country may not totally understand what that concept is. And so that case is very analogous to this case in a sense. The respondent may have had some trouble sometimes distinguishing between the legal meaning of arrest and what, you know. And he also points out that his father had gotten the records from him. And all the letter says was that there was no record of his being fingerprinted and there's no record of his having a criminal record. It doesn't say he wasn't arrested. And I think it's a very important distinction also. Counsel, another point. The I.J. complains that he never was specific about the things that would cause one to think that he had been persecuted. Was he given an opportunity to flesh out his argument? Well, there's a couple of issues. One is that an issue of vagueness. The court does point out he was vague on details. But he had quite a bit of the court actually examine him quite extensively. And he gave quite a lot of detail. He talked about how he was arrested, what he was doing, what his duties for the party were when he joined the party. These details are quite extensive compared to the details that come before this  He was a gentleman who the court did not question his identity. The court says that he believes he is who he says he is. He has a party identity card. The court says he believes that he's a member of the party. And the court does somewhat agree with a lot of what he said by himself. The court has some doubts about, you know, the details of the arrest. But the specifics of the court requires are quite extensive in the asylum context. It's almost like the court indicated the personal injury case where the court wants them to have very clear detailed specifics about particular instances that took place over a decade ago. This court has never required an applicant to be that specific. And the court also required him to bring the witnesses testifying in court, too, which this court never does require in an asylum context. And if you look at the court's decision closely, you'll understand that his testimony was not inconsistent with the declaration. It was not inconsistent with the evidence and record as a whole. But the court required him to be very, very detailed and very specific in how he described it in a particular instance.  Thank you, counsel. Do you want to save a few seconds for rebuttal, Your Honor? Thank you. Counsel, please proceed. Good morning. May it please the Court. My name is Nicholas Farley, and I represent the Respondent, the Attorney General of the United States. I'd first like to address the issues raised by the Petitioner in the 28J letter. The new country conditions that have arisen in Kenya subsequent to the immigration judge and the Board's decisions are not contained within the record on appeal. If the Petitioner wishes to raise those issues, the appropriate course of action is in a motion to reopen. With regard to the immigration judge's decision. But he can't do that now. That's correct, Your Honor. With regard to the immigration judge's decision, the immigration judge's adverse credibility finding is supported by substantial evidence. The inconsistencies that were noted in that decision are contained within the record  Moreover, even assuming that Mr. Gadhere had credibly testified, he nevertheless failed to establish persecution, a well-founded fear of persecution or torture. With regard to the credibility, the immigration judge's decision cited three areas of concern. The first involved the continued involvement of Mr. Gadhere within the Democratic Party following his arrest in 1993. On direct examination, he testified that he was no longer active. However, later on cross-examination, he testified that he was active. When asked about this discrepancy, he did not give adequate explanation. Further, there was the question of whether Mr. Gadhere was actually ever arrested Before he applied for relief from removal, he applied for adjustment status. In that context, it was to his advantage that he did not have an arrest or criminal record. He checked the box on his adjustment application stating that he had never been arrested, and he submitted documentation from the Kenyan police confirming that. However, when his adjustment application was denied and he had to seek relief from removal, it was in his best interest to have been arrested. And therefore, he testified before the immigration judge that he had been arrested. The immigration judge did not find his explanation that Petitioner's counsel had just spoke to of not quite understanding what it means to be arrested versus convicted. And the immigration judge used this to further support the adverse credibility determination. Counsel, no one denies, do they, that he was detained, no matter how you want to describe whether he was arrested or not? Is it pretty clear that he was, in fact, detained? Well, Your Honor, I believe that in reading the immigration judge's decision in the record, specifically on page 92, the immigration judge goes on to find and conclude that, in fact, he was never arrested. But that doesn't quite answer my question. There was a description of his being picked up, detained, and these things happening. Now, is that really contested, or are we just going to fight over what the rest is? I believe it is contested, Your Honor. In finding Mr. Gilear not credible, essentially what the immigration judge was saying, not only were you never arrested, you were never politically active, based on the discrepancies that were contained within his hearing testimony. I.J. never made a statement saying he wasn't even picked up or detained. Is there anything like that in the record? Let me see if I can quote from the record on page 92, dealing with that issue. A few lines down. The first paragraph of the immigration judge's decision says, I read that, Your Honor, to find that the immigration judge concluded that, based on the indiscrepancies in the hearing testimony, that he was, in fact, never arrested.    Mr. Gilear had credibly testified he did not establish that he was persecuted, that he had a well-founded fear of persecution, or that he was tortured. He mentioned two arrests that occurred four years apart. By his own testimony, the first arrest, the beatings that he allegedly received, he described them as minor injuries. And in both instances, he testified that he never sought medical attention for his injuries. Moreover, the immigration judge found that changed circumstances that had occurred in Kenya between the filing of his asylum application and the hearing mitigated any fear of future persecution, because if he had, in fact, been involved with the Democratic Party in Kenya, that party now held the presidency at the time of the hearing. And Mr. Gilear, his testimony, he himself stated that in both instances when he was arrested, it was because he was violating Kenyan law. The first time, he was with a group that was protesting without a permit. And the second, he was a symbol for the group of more than five people without a permit. Finally, the immigration judge found that there was no evidence that the police were looking for Mr. Gilear before he decided to flee from Kenya. There are no other questions from the panel. The government would argue that substantial evidence supports the immigration judge's findings, and we would request that the petition for review be denied. Thank you, counsel. You never mentioned whatsoever the possibility that we decide the credibility issue the other way around. If so, where do we go from that, particularly under Gonzales against Thuris, that case which stands for the proposition we ought to send it back to check on country conditions? How big a time spread is contained in the situation? How often should we send it back to see about changed country conditions, whether they've changed again? Are you referring, when you say the time, are you referring to the length of time it would take for the board to reconsider that issue? No. I'm referring to the question of between the alleged persecution and the present time. The alleged per... To see if the country conditions have changed. Well, Your Honor, the alleged persecution, the arrest occurred in 93 and 97. Yeah. And country conditions were found as of the time the board, yeah, the IJ made his decision and the board reached their decision, right? That's correct. How long ago was that? I'll get you the exact date. The immigration hearing order was January 6, 2003. 2003. Yes, sir. Six years ago. That's correct. I think a lot of things can happen in six years. They can and they do, Your Honor. However, in this instance, because these events are not contained within the record on appeal, the correct course of action is the motion to reopen where these issues can be raised before the board and they can be considered. Counsel, we have frequently remanded for the board to consider the country conditions without requiring a motion to reopen. You know, if the adverse conditions happen late between the time of the petition to our court and the time that they happened, we have frequently just sent it back and said, BIA, take another look. I don't think that it's mandatory that it be done by a motion to reopen. What cases do you have that would say that? Well, the cases that were drawn to my attention in the 28J letter were Thomas v. Medeiros. And the Supreme Court did send back to the board. However, they were distinguishable from this case because in Thomas, the board had not adequately considered a claim that the Petitioner had made, and in Ventura, the board did not have the opportunity to consider the claim. However, in this instance, all claims made by Mr. Medeiros were considered by the immigration judge and ruled upon. And so in that case, they're distinguishable, and the government does not feel that it is necessary for this issue of the current, more recent country conditions to be remanded to the board. Thank you, counsel. Thank you. Counsel, you saved about 20 seconds, so you probably have something you want to point out that's to correct our understanding. Good morning again, Your Honor. Mr. Stone. Briefly on Gonzalo v. Thomas. In that case, this court had actually granted, reversed the DIA decision and granted Petitioner asylum from Guatemala. And the Supreme Court says that if conditions, the Supreme Court says that they have to remand the case because between the time the court granted the asylum application and the time it went through the Supreme Court, quite a bit has changed in the country. And the Supreme Court says in a situation like that, because the court is not empowered to make the noble findings of fact, they should remand it to the DIA. So that does stand for that proposition. In fact, it was cited by several court cases from this circuit, so I do think that issue is clear. As far as the credibility finding, the court does omit explicit credibility finding. In fact, it says that it has no concrete credible evidence before it to say that he was arrested. But he does say he believes he is who he says he is. He believes he's a member of the party. And so the rest of his decision that wasn't of concrete evidence goes back to the issue of requiring him to provide very specific information he possibly couldn't provide. Thank you, counsel. Thank you, Your Honor. Githire versus Holder is submitted.
judges: Fletcher B. , Kleinfeld, Duffy